IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**JONATHAN FREDERICK BENNETT,**

      Plaintiff,

v.                                        Civil Action No. 3:13-cv-128
                                            (Judge Groh)

**ROBERT E. BARRAT, et. al.,**

      Defendants.

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

Plaintiff, proceeding *pro se*, filed two cases pursuant to Title 42, United States Code, Section 1983, which raise allegations stemming from his arrest that occurred on February 19, 2011. The Honorable Gina M. Groh, United States District Judge, filed an Order Consolidating Cases on September 26, 2013 with Civil Action No. 3:13-cv-128 as the lead case. (Order, Civil Action No. 3:13-cv-131, ECF No. 8). Plaintiff's Motion for Leave to Proceed *in forma pauperis* was granted on October 10, 2013 by Magistrate Judge James E. Seibert (ECF No. 16) and Plaintiff paid the initial partial filing fee on March 17, 2014 (ECF No. 37). This case is before the undersigned for a preliminary review and report and recommendation pursuant to LR PL P 2 and Title 28, United States Code, Section 1915(e).

### II. STANDARD OF REVIEW

Because Plaintiff is a prisoner seeking redress from a governmental entity or employee, the Court must review the complaint to determine whether it is frivolous or malicious. *See* 28 U.S.C. §1915A(a). Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial

1

review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1) & (b)(2). When reviewing a case filed by a plaintiff proceeding *pro se*, the Court liberally construes the complaint. *See Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

One of the ways a case may be dismissed is if the court finds the complaint to be frivolous. 28 U.S.C. § 1915A(b). A complaint is frivolous if it is without arguable merit either in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint which fails to state a claim under Fed. R. Civ. P. 12(b)(6) is not automatically frivolous. *See id.* at 328. Frivolity dismissals should only be ordered when the legal theories are "indisputably meritless," or where the claims rely on factual allegations which are "clearly baseless." *Id.* at 327; *see also Denton v. Hernandez*, 504 U.S. 25, 32 (1992). This includes claims in which the plaintiff has little or no chance of success. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

### III. BACKGROUND

On April 5, 2011, the Grand Jury, sitting in Martinsburg, charged Petitioner with two counts of distribution of cocaine base, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C), and one count of possession with the intent to distribute heroin and cocaine hydrochloride, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C). (Indictment, Criminal Action 3:11-cr-24, ECF No. 1.) On May 26, 2011, Petitioner signed a plea agreement in which he agreed to plead guilty to Count Two of the Indictment charging him with distribution of .5 grams of cocaine base. (Plea Agreement, Criminal Action No. 3:11-cr-24, ECF No. 22.) On June 3, 2011, Petitioner appeared to enter his guilty plea in

open court. (Change of Plea Order, Criminal Action No. 3:11-cr-24, ECF No. 25.) On October 18, 2011, Chief Judge Bailey sentenced Petitioner to a term of 30 months incarceration followed by a six-year term of supervised release. (Judgment in a Criminal Case, Criminal Action No. 3:11-cr-24, ECF No. 44.)

According to the Government's version of the offense contained in Petitioner's Pre-Sentence Report, on February 19, 2011, Trooper Schuessler of the West Virginia State Police received an anonymous tip that narcotics were being sold out of Room 258 of the Rodeway Inn in Martinsburg, West Virginia. (Pre-Sentence Report at 4, Criminal Action No. 3:11-cr-24, ECF No. 43.) A female then approached Trooper Schuessler and advised her that she was with a man she knew as "Water" at the Rodeway Inn. (*Id.*) The female advised that she had found a large plastic bag full of drugs inside Water's duffle bag. (*Id.*) Trooper Schuessler and other state police officers conducted a search of Room 258 after receiving the female's consent to search. (*Id.* at 5.) No drugs were found inside the duffle bag, but a bag containing suspected cocaine base, a bag containing suspected heroin, and a bag containing suspected Xanax and $300 were found in the bedside stand. (*Id.*)

After the search, the female gave the officers a description of Water, who was later identified as Petitioner, and told them that he had gone to the Brickhouse Bar in Martinsburg and was driving a red Dodge Magnum. (*Id.*) Officers set up surveillance near the Brickhouse Bar and observed the only red Dodge Magnum in the parking lot. (*Id.*) They observed a man matching Petitioner's description leave the bar and get into the Magnum. (*Id.*) During surveillance, Trooper Schuessler observed Petitioner get out of the Magnum and approach a white female while holding a white plastic bag. (*Id.*) Officers took Petitioner into custody, and a search of his person revealed a key to Room 258 of the Rodeway Inn and $2,330.00 (*Id.*)

## IV. THE COMPLAINT

Plaintiff argues that officers unlawfully seized $2,330.00, that the search and seizure was based on false information from the informant and was thus invalid, that the Government entrapped him by inducing him to commit the crime on February 19, 2011 and that his due process rights were violated by the failure to give him adequate notice of the civil forfeiture proceedings in state court. (Complaint, Civil Action No. 3:13-cv-128, ECF No. 1).

These arguments are raised within six (6) claims in Plaintiff's Complaint. Claim one alleges unlawful seizure of personal property, false arrest and false imprisonment against Trooper Schuessler, the arresting officer. Claim two raises "produced fraudulent misrepresented evidence" and entrapment against an informant in Plaintiff's underlying criminal case. Claim three raises "manufacturing entrapment" against Trooper Schuessler. Claim four alleges ineffective assistance of counsel against Robert E. Barrat, Esquire, Plaintiff's criminal attorney, for his failure to appear or respond to the forfeiture proceedings. Claim five alleges that Corporal Bean with the Eastern Panhandle Drugs and Violent Crimes Taskforce unlawfully seized personal property during Plaintiff's arrest on February 19, 2011 as well as "unlawful search and seizure, deprivation, conversion by detention…invasion of privacy by intrusion, and violating the taking's clause." Claim six raises "due process violation, prejudicial error, deprivation, negligent due diligence, conversion, disregard to appropriation, concealment and non-disclosure of adequate notice, color of state law, failure to serve effective petition" against Pamela Games-Neely, the Berkeley County prosecutor responsible for conducting the civil forfeiture proceedings.

Plaintiff seeks the return of $2,330.00 seized from his person on February 19, 2011 by the West Virginia State Police. He requests compensatory damages for the unlawful seizure of his

personal property as well as for mental anguish and false imprisonment. In addition, Plaintiff seeks a declaratory judgment that his civil rights were violated.

## V. ANALYSIS

### A. Civil Rights Act, 42 U.S.C. §1983

Title 42 U.S.C. §1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage.....subjects, or causes to be subjected, any citizen of the United States...to the deprivation of any rights...secured by the Constitution and laws, shall be liable to the party injured in any action at law...or suit in equity.

42 U.S.C. § 1983. Therefore, the initial inquiry in § 1983 case is: "(1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), overruled on other grounds, *Daniels v. Williams*, 474 U.S. 327 (1986).

Whether a constitutional right is alleged to have been violated is usually clear, but the under color of law requirement has been subject to more debate. "As a general rule, 'a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law.'" *Conner v. Donnelly*, 42 F.3d 220, 223 (4th Cir. 1994) (quoting *West v. Atkins*, 487 U.S. 42, 50 (1988); *see also Lugar v. Edmonson Oil Co., Inc.*, 457 U.S. 922, 936 n.18 (1982) (finding that "state employment is generally sufficient to render the defendant a state actor"). Thus, it is clear that no state law has to be in place that is the source of the constitutional violation. Rather, any person acting with a badge of authority given to them by virtue of their position with the state who violates a person's constitutional rights is subject to liability for the unconstitutional act. *See West v. Atkins,* 487 U.S. at 49 *(citing United States v. Classic*, 313 U.S. 299, 326 (1941)); *see also Monroe v. Pape*, 365 U.S. 167, 187 (1961).

5

1. **Anonymous Informant**[1]

The claim against the anonymous informant should be dismissed because he/she is not a state actor. Plaintiff alleges that the informant produced fraudulent evidence and entrapped him. (Complaint at 8, ECF No. 1).

As stated above, a § 1983 claim can only be brought against a state actor. *West v. Atkins*, 487 U.S. at 50. A state actor is typically defined as a person employed by the state. *Id.* at 49-50 (explaining that "[i]t is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State. Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law."). However, a state actor may also be an individual who is "clothed with the authority of state law." *United States v. Classic*, 313 U.S. 299, 326 (1941). For example, a medical doctor who signs an employment contract with the state to provide medical care to individuals incarcerated in the state prison is considered to be a state actor even though the doctor is not a full-time permanent member of the state prison medical staff. *See West v. Atkins*, 487 U.S. at 57. Accordingly, the Court found that when a person's actions are "fairly attributable to the State" that the person may have acted under the color of state law for the purposes of § 1983. *Id.* While a paid government informant may be classified as a state actor, a private actor must be a "willful participant" in a "joint activity with the State or its agents" in order to be considered "acting under the color of state law." *Lugar*, 457 U.S. at 928 (citing *United States v. Price*, 383 U.S. 787, 794, n. 7 (1966)).

In the present case, Plaintiff does not allege any facts indicating the informant was collaborating or working under the direction of the police when he/she first approached the

---

[1] While Plaintiff names the anonymous informant in his Complaint, in order to protect his/her identity for future publications of this Report and Recommendation, the Court will only refer to him/her as "anonymous informant" or "informant."

officers regarding the alleged drugs in the hotel room. The informant was not a paid government informant and did not undergo an undercover operation on behalf of the police. Here, the informant approached Trooper Schuessler and advised her that the man he/she was with in Room 258 at the Rodeway Inn had drugs inside of the room. (Pre-Sentence Report at 4, Criminal Action No. 3:11-cr-24, ECF No. 43). The informant then gave consent to search the room. (*Id.*). He/she further provided a description of Plaintiff, told police he was at the Brickhouse Bar in Martinsburg and was driving a red Dodge Magnum. (*Id.* at 5). Providing this information to the police does not rise to the level of participating in a joint activity as to render the informant a state actor for the purposes of § 1983.

2. **Robert E. Barrat, Esq., Attorney for Plaintiff's Underlying Criminal Case**

The claim against Mr. Barrat, Esq. should be dismissed because Mr. Barrat is not a state actor. Mr. Barrat served as Plaintiff's attorney for his underlying criminal case. (Order of Appointment, Criminal Action No. 3:11-cr-24, ECF No. 7). Plaintiff alleges that Mr. Barrat failed to adequately inquire into possible forfeiture proceedings, which resulted in Plaintiff's failure to be aware of the forfeiture hearings held on February 11, 2011, March 18, 2011 and May 31, 2011. (Complaint at 9, Civil Action No. 3:13-cv-128, ECF No. 1).

While Mr. Barrat was appointed by the Court to represent Defendant in his underlying criminal case, such appointment does not make Mr. Barrat a state actor for the purposes of a § 1983 claim. The Supreme Court of the United States has held that "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk County v. Dodson*, 454 U.S. 312, 325 (1981). The Court reasoned:

> [w]hile performing his duties, the public defender retains all of the essential attributes of a private attorney, including, most importantly, his 'professional independence,' which

> the State is constitutionally obliged to respect. A criminal lawyer's professional and ethical obligations require him to act in a role independent of and in opposition to the State. The Court accordingly concluded that when representing an indigent defendant in a state criminal proceeding, the public defender does not act under color of state law for purposes of § 1983 because he 'is not acting on behalf of the State; he is the State's adversary.'

*West v. Atkins*, 487 U.S. 42, 50 (1988) (internal citations omitted). Accordingly, a private attorney, including an attorney appointed by the Court, is not a state actor for the purposes of § 1983. Therefore, Mr. Barrat is not a proper defendant in this action.

### 3. Pamela Jean Games-Neely, Prosecutor

The claims against Pamela Jean Games-Neely should be dismissed because she is protected by prosecutorial immunity. Prosecuting attorneys are absolutely immune from individual liability when performing prosecutorial functions. *Imbler v. Pachtman*, 424 U.S. 409 (1976); *Ostrzenski v. Seigel*, 177 F.3d 245 (4th Cir. 1999). For instance, prosecuting attorneys are entitled to immunity when deciding whether to prosecute, even if the decision to prosecute is malicious. *Imbler*, 424 U.S. at 427*; see also Wadkins v. Arnold*, 214 F.3d 535 (4th Cir. 2000). There is an exception to the absolute prosecutorial immunity rule, however, if the prosecuting attorney acts in the role of administrator or investigative officer, rather than as a prosecutor. *Imbler*, 424 U.S. at 430. Thus, when a court determines whether a prosecuting attorney is entitled to absolute immunity, it must examine the type of activity performed, not the identity of the individual who performed it. *Forrester v. White*, 484 U.S. 219, 229 (1988).

In this case, Plaintiff contends that Ms. Games-Neely violated his due process rights by failing to issue adequate notice of the civil forfeiture hearing involving Plaintiff's property held on March 18, 2011, May 31, 2011 and July 12, 2011 in Berkeley County Circuit Court. (Complaint at 10, Civil Action No. 3:13-cv-128, ECF No. 1). Plaintiff further alleges that Ms. Games-Neely failed to make a diligent effort to inform Plaintiff of the forfeiture hearing despite

8

knowing exactly where Plaintiff was incarcerated at the time of the hearings. These allegations clearly involve Ms. Games-Neely acting in her role as a prosecutor. Ms. Games-Neely is therefore entitled to prosecutorial immunity and is not a proper defendant in this action.

   **4. Trooper J.D. Schuessler, West Virginia State Police**

Plaintiff claims that Trooper Schuessler unlawfully seized personal property, made a false arrest, executed his false imprisonment and manufactured entrapment. (Complaint at 7, Civil Action No. 3:13-cv-128, ECF No. 1).

The entrapment, false arrest and false imprisonment claims involve the legality of Plaintiff's underlying criminal conviction. Plaintiff states that no arrest warrant was issued and the anonymous tip was not adequately investigated to allow for a warrantless arrest. (*Id.* at 8). Plaintiff asserts that the drugs found were in the informant's hotel room, not his, and that he had no knowledge of the drugs. (*Id.*). Plaintiff further states that that when police observed him interacting with a female in a perceived drug transaction in the parking lot of the Brickhouse Bar, that he was only having a casual conversation with the female in the parking lot, not engaging in illegal activity. (*Id.* at 8-9). He further alleges that Officer Schuessler failed to discover any illegal narcotics after searching Plaintiff and his vehicle following his apprehension in the parking lot of the Brickhouse Bar, which demonstrates there was not probable cause for his arrest. (*Id.*).

The claims against Defendant Schuessler should be dismissed as frivolous because Plaintiff has no chance of success. In *Heck v. Humphrey*, the Supreme Court of the United States held that:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive

order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus.

*Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (footnote omitted). The Supreme Court stated that one reason for imposing such a requirement is to prevent a convicted criminal defendant from collaterally attacking his criminal conviction through a civil suit. *Id*. at 484. Thus, when a state prisoner seeks damages in a § 1983 suit, the issue is whether "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Id.* at 487. If the judgment in favor of the plaintiff would imply the invalidity of his conviction or sentence, "the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." But if the "plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." *Id.*

Upon review of the complaint, the undersigned finds that a decision favorable to Plaintiff with respect to his claims against Defendant Schuessler would necessarily imply the invalidity of his conviction or sentence. Furthermore, Plaintiff has failed to make a showing that his conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus. Accordingly, Plaintiff has no chance of success, and his claims are therefore frivolous.

5. **Corporal B.W. Bean, State Trooper, Eastern Panhandle Drug and Crimes Taskforce**

Plaintiff raises claims against Corporal B.W. Bean for unlawful search and seizure, unlawful seizure of personal property and "deprivation, conversion by detention, asportiation [sic], invasion of privacy by intrusion and violating the taking's clause." (ECF No. 1 at 8-9).

Similar to the above analysis for Trooper Schuessler, Plaintiff's claim for unlawful search and seizure should be dismissed as frivolous based on *Heck v. Humphrey*. Upon review of the complaint, the undersigned again finds that a decision favorable to Plaintiff with respect to his claim for unlawful search and seizure against Defendant Bean would necessarily imply the invalidity of his conviction or sentence. Plaintiff has failed to make a showing that his conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus. Accordingly, Plaintiff has no chance of success and this claim is therefore frivolous.

Additionally, the conversion and invasion of privacy by intrusion claims are common law tort claims that cannot be raised pursuant to § 1983. Similarly, asportation is not a valid claim. Lastly, the claim that Corporal Bean violated the Taking's clause based on the forfeiture of $2,330.00 is frivolous and should be dismissed.

Plaintiff raises a claim for unlawful seizure of personal property against Corporal Bean as well as Trooper Schuessler. The Court finds that these claims are also frivolous and should be dismissed. The $2,330.00 at issue in this case was not unlawfully seized, but rather was subject to a valid civil forfeiture proceeding in Berkeley County Circuit Court.

First, service, or notice of the petition for forfeiture, was properly executed in this case. The July 12, 2011 Order of Judgment entered by Judge Wilkes in the Circuit Court of Berkeley County states that service giving notice of the proceeding was properly executed under the West Virginia Rules of Civil Procedure. (Order of Judgment at 1, Civil Action No. 3:11-cv-103, ECF No. 25-1). Despite Plaintiff's assertion that he was unaware of the proceedings, the Order demonstrates that notice was in fact given by mailing the petition for forfeiture to Plaintiff's last

11

known address and when the mail was returned as unclaimed, a legal advertisement was published in the Martinsburg Journal on April 19 and 26, 2011. (*Id.*). Plaintiff's failure to be aware of the proceedings does not mean that service was not properly executed.

Second, the facts as presented in Judge Wilkes' Order demonstrate that the proper procedure was applied in this forfeiture proceeding. The Court considered the facts of the case, the verified petition and the pleadings and evidence before the Court and made specific findings of fact. (*Id.* at 2). The petition asserted that the seized currency "was gained from prior illegal drug transactions, was to be used in the commission of illegal drug transactions and/or was to be used in furtherance of illegal drug activity in violation of the West Virginia Contraband Act." (*Id.* at 6). Neither Plaintiff nor Plaintiff's counsel filed an answer with the Court. (*Id.* at 7). As such, the petitioner, Pamela Jean Games-Neely, Prosecuting Attorney of Berkeley County on behalf of the Eastern Panhandle Drug and Violent Crimes Task Force, was found to be "entitled to a default judgment." (*Id.*). Therefore, Plaintiff's property was subject to forfeiture, pursuant to the West Virginia Contraband Forfeiture Act, Chapter 60A, Article 7, Section 701, *et. seq.* (*Id.*). Plaintiff alleges no facts that the Berkeley County Circuit Court, the prosecuting attorney or Judge Wilkes failed to apply the proper procedure for the forfeiture hearing under West Virginia state law. Therefore, the claim for unlawful seizure of personal property must be dismissed.[2]

## VI. RECOMMENDATION

For the reasons stated herein, the undersigned respectfully recommends that Plaintiff's Complaint (ECF No. 1) be **DISMISSED WITH PREJUDICE** against all Defendants because Plaintiff's claims are frivolous. *See* 28 U.S.C. § 1915A(b).

---

[2] The Court notes that the above analysis similarly applies to Plaintiff's due process violation claim asserted against Pamela Games-Neely based on her failure to give adequate notice of the forfeiture proceeding. While the claim against Ms. Games-Neely must be dismissed because she has prosecutorial immunity when performing prosecutorial functions, Plaintiff's due process claim would still fail because the facts demonstrate that there was no deprivation of due process because notice was given and a hearing held.

12

Within fourteen (14) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Gina M. Groh, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

The Court further directs the Clerk of the Court to mail a copy of this Report and Recommendation to the *pro se* Petitioner Jonathan Frederick Bennett.

**DATED:** August 19, 2014

_____
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE